## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

**Civil No. 16-2021 (JRT/LIB)**

KEITH GUGGENBERGER,

                              Plaintiff,

v.

STARKEY LABORATORIES, INC.,

                              Defendant,

and

UNITED STATES OF AMERICA,

                              Movant.

**MEMORANDUM OPINION
AND ORDER**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*\* \* \* \*

**Civil No. 16-2022 (JRT/LIB)**

JULIE MILLER,

                              Plaintiff,

v.

STARKEY LABORATORIES, INC.,

                              Defendant,

and

UNITED STATES OF AMERICA,

                              Movant.

---

William Michael, Jr., **MAYER BROWN LLP**, 71 South Wacker Drive, Chicago, IL  60606, and Mark J. Briol and William G. Carpenter, **BRIOL & ASSOCIATES**, 80 South Eighth Street, Suite 3700, Minneapolis, MN 55402, for plaintiff Keith Guggenberger.

David H. Redden, **FABIAN MAY & ANDERSON, PLLP**, 1625 Medical Arts Building, 825 Nicollet Mall, Minneapolis, MN  55402, for plaintiff Julie Miller.

David Bradley Olsen and Scott Nielson, **HENSON & EFRON, PA**, 220 South Sixth Street, Suite 1800, Minneapolis, MN  55402, for defendant.

Benjamin F. Langner, Craig R. Baune, Erin M. Secord, and Lola Velazquez-Aguilu, Assistant United States Attorneys, **UNITED STATES ATTORNEY'S OFFICE**, 600 United States Courthouse, 300 South Fourth Street, Minneapolis, MN 55415, for movant.

Plaintiffs Keith Guggenberger and Julie Miller filed these two related employment cases in state court, seeking damages arising from their September 2015 termination by Defendant Starkey Laboratories, Inc. ("Starkey"). In state court, Guggenberger and Miller served Starkey with various discovery requests. In separate proceedings, the United States indicted a number of other former Starkey employees, who were also terminated in September 2015, on federal conspiracy, mail fraud, wire fraud, and money laundering charges; the indictment alleges that those employees defrauded Starkey of more than $20 million. The United States attempted to permissively intervene in the civil state-court matters for the purpose of delaying discovery pursuant to Minn. R. Civ. P. 24.02, arguing discovery in the civil matters could disturb the integrity of the federal criminal case. The state court denied intervention and the United States subsequently removed both cases to federal court pursuant to 28 U.S.C. § 1442(a)(1).

Guggenberger and Miller move for remand to state court, arguing the Court lacks jurisdiction; they also request an award to cover costs and fees related to the improper removal. The United States moves for permissive intervention and a stay of discovery. Starkey moves to stay the civil litigation, or alternatively, to stay discovery.

The Court will grant Guggenberger's and Miller's motions for remand because it lacks jurisdiction and removal under § 1442(a)(1) was improper. However, because the United States' good-faith argument for removal was objectively reasonable, the Court

will deny Guggenberger's and Miller's requests for costs and fees.  The Court will deny as moot all other pending motions.

## BACKGROUND

### I.   FACTS

#### A.   Federal Indictment of Former Starkey Executives

Starkey is a large hearing aid company based in Minnesota.  (*Guggenberger*[1] Notice of Removal ("*Guggenberger* Removal Notice"), Ex. 1 ("*Guggenberger* Am. Compl.") ¶ 1, June 20, 2016, Docket No. 1.)  Starkey terminated a number of employees in September 2015, when an alleged large-scale fraud scheme orchestrated by top-level executives came to light.  (*Id.* ¶ 14; *Guggenberger* Second Decl. of Erin M. Secord ("*Guggenberger* Second Secord Decl."), Ex. M ("Indictment") ¶ 1, Oct. 4, 2016, Docket No. 37.)  Guggenberger and Miller were among those fired.  On September 21, 2016, three of the terminated employees – Scott Nelson, Larry Miller, and former Starkey President Jerry Ruzicka – were federally indicted on charges including mail fraud, wire fraud, money laundering, and conspiracy.  (Indictment ¶¶ 1, 17-55.)  The indictment alleges that the criminal defendants defrauded Starkey of more than $20 million over many years.  (*Id.* ¶ 64.)

#### B.   Termination of Guggenberger and Miller

At the time of his termination, Guggenberger was a twenty-nine-year employee of Starkey who most recently served as Senior Vice President of Operations; he reported to

---

[1] Citations referencing "*Guggenberger*" denote the docket for Case No. 16-2021. Citations referencing "*Miller*" denote the docket for Case No. 16-2022.

Ruzicka. (*Guggenberger* Am. Compl. ¶¶ 2, 9.) Miller worked at Starkey for almost forty years; at the time of her termination she was Senior Executive Assistant to Ruzicka, and she is married to Larry Miller. (*Miller* Notice of Removal ("*Miller* Removal Notice"), Ex. 1 ("*Miller* Compl.") ¶¶ 3, 9, June 20, 2016, Docket No. 1; Indictment ¶ 1.)

On September 30, 2015, Guggenberger filed a lawsuit against Starkey in Minnesota state court, alleging breach of employment contract, breach of the implied covenant of good faith and fair dealing, defamation, unpaid wages under Minn. Stat. § 181.13, unjust enrichment/quantum meruit, and a federal statutory claim under 29 U.S.C. § 1132. (*Guggenberger* Removal Notice ¶ 2; *Guggenberger* Am. Compl. ¶¶ 24-45.) Guggenberger demands damages in excess of $11 million. (*Guggenberger* Am. Compl. ¶¶ 29, 35.)

On December 22, 2015, Miller filed a lawsuit against Starkey in Minnesota state court. Miller asserts three claims: marital status discrimination under the Minnesota Human Rights Act, Minn. Stat. § 363A.08, subd. 2, breach of contract, and promissory estoppel. (*Miller* Compl. ¶¶ 14-30.) Miller demands damages in excess of $50,000. (*Id.* ¶¶ 18, 24, 30.)

## II.   PROCEDURAL HISTORY

### A.   State Court

On March 16, 2016, the state court granted Starkey's motion to companion *Guggenberger* and *Miller* for discovery pursuant to Minn. Gen. R. Prac. 113 and Minn. R. Civ. P. 42.01 because of the substantial overlap of fact and law between the cases. (*Guggenberger* Aff. of William Carpenter ("Carpenter Aff."), Ex. 2 at 33-34, July 1,

2016, Docket No. 15.)  The state court reasoned that "[t]here will be identical questions of law presented by discovery, particularly concerning Fifth Amendment protections for witnesses while a criminal investigation is pending."  (*Id.* at 33.)[2]  Starkey has not yet filed an Answer in either case.[3]

On April 29, 2016, Guggenberger served discovery requests on Starkey, seeking the names of all Starkey employees and vendors who provided information about Guggenberger to law enforcement; the names of the law enforcement officers who received that information; a description of all such communications between Starkey and law enforcement; and documents related to any law enforcement investigation of Guggenberger in Starkey's possession.  (*Id.*, Ex. 3 at 39-40, 46-47.)  Guggenberger also noticed a number of depositions, including a deposition of Starkey and Starkey's private investigation firm.  (*Id.* at 49-50, 58; *see also id.* at 60-61.)[4]

---

[2] Ruzicka filed a separate civil action against Starkey, *Ruzicka v. Starkey Laboratories, Inc.*  Upon remand, *Ruzicka* will likely be consolidated with *Guggenberger* and *Miller*, though the *Ruzicka* matter is currently stayed indefinitely pending mediation.  (Carpenter Aff., Ex. 2 at 32, 34; *Guggenberger* Aff. of David Bradley Olsen, Ex. D, Oct. 4, 2016, Docket No. 32.)

[3] Starkey plans to assert as a defense that Miller's and Guggenberger's contracts are not enforceable because Ruzicka executed them on behalf of Starkey "incident to and in furtherance of a scheme to defraud."  (*Guggenberger* Second Secord Decl., Ex. O at 2.)  Starkey also believes that though Guggenberger and Miller were not indicted, they were complicit in Ruzicka's fraud scheme, and thus Starkey plans to file counterclaims to seek to hold them civilly liable and joining the Ruzicka, Nelson, and Larry Miller as third-party defendants. (*Guggenberger* Tr. of Mots. Hr'g Held Oct. 25, 2016 ("Tr.") at 46-47, 51-52, Nov. 16, 2016, Docket No. 44.)

[4] Guggenberger states he seeks this discovery for purposes germane to his claims, such as: determining what information Starkey had at the time of termination; assessing whether Starkey has continued to defame Guggenberger; ascertaining whether Starkey has waived privileges with respect to discoverable information and documents; and uncovering impeachment evidence.

On May 9, 2016, Miller served Starkey with discovery requests.  (*Miller* Decl. of Erin M. Secord ("*Miller* Secord Decl."), Ex. C at 37-50, Aug. 2, 2016, Docket No. 17.) Miller requested, among other things, documents relating to and a detailed explanation of the reasons for Miller's and her spouse's termination, and information regarding Miller's employment contract and Starkey's anticipated defenses.  (*Id.* at 40-42.)  Like Guggenberger, Miller noticed depositions of Starkey executives.  (*Id.* at 4.)  Unlike Guggenberger's requests, Miller's discovery requests make no mention of the criminal investigation or Starkey's communications with law enforcement.  (*See id.* at 4-5, 37-50.)

On May 19, 2016, the United States filed Notices of Permissive Intervention in *Guggenberger* and *Miller* pursuant to Minn. R. Civ. P. 24.02,[5] stating:

> Guggenberger's publicly-filed pleadings acknowledge the existence of a criminal investigation, and he has served discovery requesting information that [Starkey] provided or identified to law enforcement or "prosecutorial personnel."
>
> The government is conducting an investigation into criminal conduct of which Starkey may be a victim, and there are questions of fact or law common to the investigation, this case, and the related cases, [*Miller* and *Ruzicka*].

---

[5] Rule 24 of the Minnesota Rules of Civil Procedure governs intervention.  Under Rule 24.01, a non-party may make a timely application for of-right intervention

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

In contrast, Rule 24.02 governs permissive intervention, which is discretionary and is available when "an applicant's claim or defense and the main action have a common question of law or fact."  Applicants for intervention must first file a "notice of intervention" – if there is no objection, then intervention is "deemed to have been accomplished" after thirty days.  Minn. R. Civ. P. 24.03.  If a party objects, then the applicant must "serve a motion to intervene."  *Id.*

The United States seeks to protect the integrity of its criminal investigation by, among other things, preventing circumvention of limitations on discovery pursuant to the Federal Rules of Criminal Procedure. The government also seeks to protect from disclosure the focus and scope of the grand jury investigation as well as information provided to the grand jury. *See* Fed. R. Crim. P. 6(e). The discovery sought in this matter and in the related *Miller* matter would undermine those interests.

(Carpenter Aff., Ex. 5 (citation omitted); *see also Miller* Secord Decl., Ex. D (near-identical language).) Guggenberger stipulated to the United States' permissive intervention for the sole purpose of allowing the United States to argue for a stay of discovery and reserved the right to object to the motion to stay discovery. (Carpenter Aff., Ex. 6.) Miller objected to the United States' intervention, and the United States moved to intervene as required by Minn. R. Civ. P. 24.03. (*Miller* Secord Decl., Exs. E-F.) The United States argued that it sought intervention to "protect the integrity of its criminal investigation" by (1) "preventing circumvention of limitations on discovery pursuant to the Federal Rules of Criminal Procedure" and (2) "protect[ing] from disclosure the focus and scope of the grand jury investigation as well as information provided to the grand jury." (*Id.*, Ex. A ¶ 8.)

Five days before the state-court hearing on the United States' motion for permissive intervention, the United States filed briefing indicating, for the first time, its intent to remove the case to federal court after intervention in order to "submit its Motion to Stay Discovery to a federal judge authorized to receive and evaluate federal grand jury materials that are subject to [Fed. R. Crim. P.] 6(e) protection." (Carpenter Aff., Ex. 7; *id.*, Ex. 8 at 82.) Guggenberger responded that his prior "stipulation to intervention [was] not valid for intervening for the purpose of removal," and objecting to the United States' intervention for that purpose. (*Id.*, Ex. 9 at 85.)

Shortly before the state-court hearing began, the court issued a written order granting the United States permissive intervention in *Guggenberger* based on the parties' joint stipulation, apparently unaware of the United States' plan to remove the case immediately after intervening and Guggenberger's opposition.  (*Guggenberger* Decl. of Erin M. Secord ("*Guggenberger* Secord Decl."), Ex. K, July 21, 2016, Docket No. 23.) At the hearing, the judge stated that he was inclined to grant permissive intervention in *Miller* to allow the United States to argue for a stay of discovery.  (Carpenter Aff., Ex. 10 ("State Tr.") at 91.)

After the parties explained that the United States planned to immediately remove the case after intervening, the court changed course, denying the United States' motion for permissive intervention in *Miller* and revoking intervention in *Guggenberger*.  (*Id.* at 91-94.)   The state court expressed irritation with the United States' strategy to first portray intervention as a path to argue for staying discovery in state court, then later seeking intervention solely in order to generate removal jurisdiction.  (*Id.* at 95-97; *see also Guggenberger* Removal Notice, Ex. 2 at 3.)  In a subsequent written order, the court explained that "the court is aware of no authority – nor was any cited by [the United States] – that mandates a permissive intervention so that a case may be removed to federal court."  (*Guggenberger* Removal Notice, Ex. 2 at 3.)   Despite denying intervention, the state court instructed the parties to propose language for a protective order and an order partially staying discovery.  (State Tr. at 105-06.)

### B.  Federal Court

On June 20, 2016, after the state court denied permissive intervention, the United States removed *Guggenberger* and *Miller* pursuant to 28 U.S.C. § 1442(a)(1).  In the Notices of Removal, the United States explained:

> This notice of removal is filed pursuant to 28 U.S.C. § 1442(a)(1) because the Hennepin County District Court's Order Dated June 20, 2016 is "against or directed to" the United States.  *See, e.g.*, *People's Nat'l Bank of Mora v. BWHC, LLC*, No. 08-408 (PJS/JJG), 2008 WL 10973336 (D. Minn. Oct. 10, 2008).  Further, the United States has raised issues in response to the Plaintiff's requested discovery that . . . arise out of its obligations to enforce federal law.  *See* Fed. R. Crim. P. 6(e).

(*Guggenberger* Removal Notice at 2; *Miller* Removal Notice at 2.)

Guggenberger and Miller filed motions to remand pursuant to 28 U.S.C. § 1447(c).  (*Guggenberger* Mot. for Remand, July 1, 2016, Docket No. 11; *Miller* Mot. for Remand, July 12, 2016, Docket No. 9.)  Guggenberger and Miller argue that § 1442(a)(1) does not provide a basis for removal in this case.  They seek an award of costs and fees pursuant to § 1447(c).

After removal, the United States filed a letter with the Court under D. Minn. LR 7.1(j) requesting leave to file a motion to reconsider the state court's denial of permissive intervention.  The Court denied the United States' request and, instead, directed that the Court would consider new motions for intervention and a stay.  Subsequently, the United States filed motions to stay discovery and motions for permissive intervention.  On the same date, Starkey filed motions to stay litigation, or alternatively, to stay discovery in both cases.

## ANALYSIS

## I.   FEDERAL JURISDICTION

The Court first considers the threshold question of whether there is federal jurisdiction in this case.  Guggenberger and Miller assert two arguments to support their claim that the Court lacks jurisdiction.  First, they argue the United States has not satisfied the substantive requirements of § 1442(a)(1).  Second, they argue the United States' notice of removal was not timely under 28 U.S.C. § 1446.

### A.   Standard of Review

Federal courts are obligated to examine and confirm the basis for their jurisdiction, even where neither party to the controversy has raised the issue.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).  "[T]wo things are necessary to create [federal] jurisdiction, whether original or appellate.  The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it."  *The Mayor v. Cooper*, 73 U.S. (6 Wall.) 247, 252 (1867).  "Without jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause," or, upon a motion to remand, remanding the case.  *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868).

After removal, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  The party seeking removal bears the burden of demonstrating that removal was proper.

*Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009).   In addition to the notice of removal and its exhibits, to determine whether there is jurisdiction, the court may consider documents submitted after the notice of removal as well as those attached to subsequent motions.  *See Willingham v. Morgan*, 395 U.S. 402, 407 n.3 (1969).

## B.   Jurisdiction Pursuant to 28 U.S.C. § 1442(a)(1)

### 1.   Legislative History

Section 1442,[6] which is often referred to as the "federal officer removal statute," "confers jurisdiction as well as the right of removal."  *Niagara Mohawk Power Corp. v.*

---

[6] The statute provides in relevant part:

(a)   A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:

    (1)   The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such officer or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

. . . .

(d)   In this section, the following definitions apply:

    (1)   The terms "civil action" and "criminal prosecution" include any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued.  If

(Footnote continued on next page.)

*Bankers Trust Co. of Albany*, 791 F.2d 242, 244 (2d Cir. 1986). "The federal officer removal statute has existed in some form since 1815." *In re Commonwealth's Mot. to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015). Congress enacted the original federal officer removal statute during the War of 1812, when Congress instituted an unpopular trade embargo with England. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147-48 (2007). The statute provided a federal forum for lawsuits against federal customs officials, tasked with enforcing the embargo, who faced a barrage of state-court claims challenging their enforcement actions from frustrated New England shipowners. *Id.* Congress intended the statute to "protect [these] federal officers from interference by hostile state courts." *Id.* (quoting *Willingham*, 395 U.S. at 405). Over time Congress expanded the statute to allow for removal of state lawsuits against federal officers enforcing federal tariff laws and collecting taxes. *Id.* In 1948, Congress "dropp[ed] its limitation to the revenue context" and enacted the modern federal officer removal statute, codified at § 1442. *Id.* at 148-49.

There have been two relevant amendments to § 1442. First, in 1996, Congress amended § 1442(a)(1) to allow for removal by "the United States or any agency

_____

(Footnote continued.)

removal is sought for a proceeding described in the previous sentence, and there is no other basis for removal, only that proceeding may be removed to the district court.

28 U.S.C. § 1442.

thereof."[7]   Federal Courts Improvement Act of 1996, Pub. L. No. 104-317, § 206, 110 Stat. 3847, 3850 (codified as amended at 28 U.S.C. § 1442).

Second, in the Removal Clarification Act of 2011, Congress made a number of significant changes to the statute.  The Act added the definition of "'civil action' and 'criminal prosecution'" that appears in § 1442(d)(1).  Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2, 125 Stat. 545, 545 (codified as amended at 28 U.S.C. §§ 1442, 1446, 1447 (2012)).  By amending § 1442(a) to allow removal of actions "against or directed to" federal entities, as opposed to just "against" them, the 2011 amendment allows for removal even when the removing entity is not a traditional defendant.[8]  *Id.*

The overall purpose of the Removal Clarification Act was "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding to a U.S. district court for adjudication."  H.R. Rep. No. 112-17(I), at 1 (2011).  The Act was a direct response to the widespread state practice permitting pre-suit discovery in state court.  *Id.* at 2.

---

[7] Before 1996, § 1442(a)(1) only explicitly allowed for removal by "[a]ny officer of the United States or any agency thereof, or person acting under him, for any act under color of such office."  The 1996 amendment explicitly reversed *International Primate Protection League v. Administrators of the Tulane Education Fund*, 500 U.S. 72, 79-87 (1991), where the Supreme Court held that federal agencies were not entitled to remove under the pre-1996 version of § 1442(a)(1).  S. Rep. No. 104-366, at 30-31 (1996); H.R. Rep. No. 104-798, at 19-20 (1996).

[8] According to the House report, the 2011 amendment "clarifies that a civil action 'commenced' in State court includes those brought 'against' a Federal officer (which covers suits) as well as those 'directed to' a Federal officer (which presumably covers discovery proceedings)."  H.R. Rep. No. 112-17(I), at 6 (2011).

> [T]he problem occurs when a plaintiff who contemplates suit against a Federal officer petitions for discovery without actually filing suit in State court.  An increasing number of Federal courts maintain this conduct just anticipates a suit; it is not a "cause of action" as contemplated by the Federal removal statute.

*Id.* at 4.  Congress amended the statute after the General Counsel's Office recommended the removal statute should "take into account the operation of these State pre-civil suit discovery statutes" by permitting removal when discovery is sought from a federal entity, even if there has been no lawsuit filed against it.  *Id.*

### 2.    Application of § 1442(a)(1)'s Substantive Requirements

When the federal government or a federal agency[9] removes an action under § 1442(a)(1), the statute requires satisfaction of two elements to permit removal.  First, there must be "[a] civil action or criminal prosecution that is commenced in a State court and that is against or directed to" the federal government or agency.  28 U.S.C. § 1442(a).  Second, the federal government or agency must assert a "colorable federal defense."  *Mesa v. California*, 489 U.S. 121, 129 (1989); *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

Courts interpreting § 1442(a)(1) have repeatedly held that "[u]nlike the general removal statute, the federal officer removal statute is to be 'broadly construed' in favor of a federal forum."  *In re Commonwealth's Mot.*, 790 F.3d at 466-67.  However, while the Supreme Court "has made clear that [§ 1442] must be 'liberally construed[,]' . . . broad

---

[9] Additional jurisdictional elements apply when a federal officer or agent removes pursuant to § 1442(a)(1).  *See Jacks v. Meridian Res. Co.*, 701 F.3d 1224, 1230 (8th Cir. 2012).

language is not limitless.  And a liberal construction nonetheless can find limits in a text's language, context, history, and purposes."  *Watson*, 551 U.S. at 147.  Keeping this guidance in mind, the Court examines the two jurisdictional requirements.

### a.    "Civil action . . . against or directed to"

The United States asserts that because the state court issued a judicial order denying the United States' motion for permissive intervention, *Guggenberger* and *Miller* are civil actions "against or directed to" the United States under § 1442(a).

The United States' argument stretches the plain text much too far.  The statute defines "civil action" to mean "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order, including a subpoena for testimony or documents, is sought or issued."  § 1442(d)(1).  There is no dispute that *Guggenberger* and *Miller*, and any ancillary discovery proceedings, are "civil actions." But Guggenberger and Miller did not file their actions "against" the United States, so the only possible option for removal under § 1442(a) is that the civil actions were "directed to" the United States.

The definition of the verb "direct" is "t[o] aim (something) in a particular direction or at a particular person."  *New Oxford American Dictionary* 491 (3d ed. 2010).  The Court interprets the term "directed to" to require a party, other than the federal agency, officer, or agent seeking removal, to "aim" the civil action at the federal entity in order for the action to be removable under § 1442(a).  A court's response to a federal entity's motion for permissive intervention does not suffice, since in such a situation, the federal

entity seeking removal "directed" or "aimed" the resulting judicial order at itself. *See Stephen L. LaFrance Holdings, Inc. v. Sorensen*, 278 F.R.D. 429, 440 (E.D. Ark. 2011) (rejecting the United States' "novel argument that, because it intervened, the civil action is now against the U.S. Government").[10] If Congress had intended any judicial order responding to a motion by the federal government to trigger removability, the statute would simply say so. Instead, the statute requires a "civil action" to be "against or directed to" the federal entity to enable removal.

In *Guggenberger* and *Miller*, no party sought any order to be directed to the United States, named the United States as a defendant, sought to subpoena the United States, or even initiated any motion in opposition to the United States. No party took any action haling the United States into court. The judicial order denying intervention was merely a response to the United States' motion, rather than a result "directed" by any party attempting to compel exercise of coercive state judicial power over the United States.

The Court's holding that *Miller* and *Guggenberger* are not civil actions "directed to" the United States is wholly consistent with the historical and modern purposes of the statute. The purpose of the federal officer removal statute has always been to provide a federal forum when a federal entity is haled into court by a party.

---

[10] The court in *Sorensen* was interpreting the pre-2011 version of § 1442(a), which required a civil action "against" the federal entity. *See Sorensen*, 278 F.R.D. at 439 & n.52. The Court adopts *Sorensen*'s reasoning that when a state civil action involves permissive intervention by a federal entity in order to seek enforcement of the Federal Rules of Criminal Procedure, that civil action is not "against" the federal government, and further, the Court applies *Sorensen*'s reasoning to conclude that such a civil action is also not "directed to" the federal government.

> [T]he removal statute's "basic" purpose is to protect the Federal
> Government from the interference with its "operations" that would ensue
> were a State able, for example, to "arres[t]" and bring "to trial in a State
> cour[t] for an alleged offense against the law of the State," "officers and
> agents" of the Federal Government "acting . . . within the scope of their
> authority."  State-court proceedings may reflect "local prejudice" against
> unpopular federal laws or officials.  In addition, States hostile to the Federal
> Government may impede through delay federal revenue collection or the
> enforcement of other federal law.  And States may deprive federal officials
> of a federal forum in which to assert federal immunity defenses.

*Watson*, 551 U.S. at 150-51 (citations omitted).

When Congress added the term "directed to" to the statute in 2011, its narrow

purpose was "to establish[] that cases may be removed when federal documents are

sought in state court cases," even when the federal entity is not a defendant.  *Rodgers v.*

*Gilbert*, No. 11-604, 2012 WL 1567203, at *2 (W.D. Ky. Apr. 30, 2012); *see generally*

H.R. Rep. No. 112-17(I).  While the statute's broad language, rather than the House

Report, is binding on the Court, Congress's stated purpose of preventing the coercive

exercise of state-court subpoena power against federal entities is a useful interpretive

touchstone.  Although the 1996 and 2011 amendments did broaden the removal statute,

the overarching purpose has remained constant.  *See* H.R. Rep. No. 112-17(I), at 3.

Congress never intended § 1442(a)(1) to provide a federal forum when the federal

government merely seeks to insert itself, at the discretion of a state court, into an action

between private parties.

The United States relies heavily on dicta from *Peoples National Bank of Mora v.*

*BWHC, LLC*, No. 08-408, 2008 WL 10973336 (D. Minn. Oct. 10, 2008), for the

argument that denial of a motion for permissive intervention amounts to a "civil action"

that is "against or directed to" the United States. *Mora* involved a state-court action between non-diverse parties asserting only state-law claims. *Id.* at *1. A defendant sought discovery of certain documents created by the Office of the Comptroller of the Currency of the United States ("OCC") in the plaintiff's possession. *Id.* OCC argued that the documents were OCC property, as established by federal regulation, and that federal regulation also prohibited the private party from providing the documents during discovery. *Id.* at *2-3 & n.3. But OCC was not a party to the state proceeding and made no motion to intervene before removing to federal court. *Id.* at *2.

Interpreting the pre-2011 version of § 1442(a), the court remanded, reasoning that "when a party seeks in state court to compel the production from a third party of documents that belong to the federal government, the state-court proceedings are removable by the federal government if it has intervened in the state-court proceedings." *Id.* at *3. The court concluded that the action was not "against" OCC, but intervention would solve this problem, converting the action into one "against" OCC. *Id.* at *3-4. The court went on to explain:

> If the state court allows the government to intervene and accepts its arguments, the government will not need to remove the action to federal court. This promotes judicial economy because the state court, which is familiar with the case, will have the opportunity to rule on the federal government's arguments in the first instance. And if the state court either denies the government's motion to intervene, or allows intervention but rejects the government's arguments on the merits, removal under § 1442(a)(1) will be consistent with that statute's text because it will be at least plausible to characterize the state court's action as directed "against" the government.

*Id.* at *4.

In this case, *Mora* is inapposite because *Mora* held that a proceeding may be removable "when a party seeks in state court to compel the production from a third party of documents **that belong to the federal government**." *Id.* at *3 (emphasis added). To the extent *Mora* could be read to justify removal based solely on the state court's denial of the United States' motion for permissive intervention when no federal government property is at issue, the Court respectfully disagrees with *Mora*'s reasoning, noting that the relevant language is dicta. The Court holds that it is not "plausible to characterize" a state court order denying the United States permissive intervention as a civil action "against or directed to" the United States.[11]  As explained above, the civil action itself – not just the judicial order – must be aimed at the United States by another party to make a proceeding removable. The better reading of *Mora* is that the court required both a federal property interest in a document in a private party's possession and a motion to intervene as a matter of right before the statute permits the United States to remove.

The United States also relies on the Eighth Circuit's opinion in *Todd*. There, a defendant in a federal criminal case filed a civil action in state court pursuant to the

---

[11] By the same reasoning, the Court also disagrees with *Mora*'s suggestion that a state court order denying a federal government motion to limit discovery in some way converts an action between private parties regarding federal property into an action "against or directed to" the federal government. The court in *Mora* proposed that in such disputes, the state court should first be given a chance to weigh in, and if the federal government dislikes the result, it can then remove the case pursuant to § 1442(a)(1). *Mora*, 2008 WL 10973336, at *4. But the federal officer removal statute was designed to allow federal officers, agents, and agencies to avoid litigating their federal-law defenses in state court in the first instance, not to allow a second chance to litigate when a state court decides an issue in their opponent's favor. The Court should not impose an extra-textual jurisdictional requirement – that the federal government must first try and fail in state court before it may remove – as long as all statutory jurisdictional requirements are met.

Arkansas Freedom of Information Act seeking to compel the release of files in the possession of state police. *Todd*, 245 F.3d at 692. The files related to investigations into the defendant's alleged criminal activities. *Id.* The United States Attorney intervened because the files belonged to the United States and asserted that the federal Freedom of Information Act prohibited their disclosure. *Id.* at 692-93. The United States subsequently removed pursuant to § 1442(a)(1). *Id.* at 692.

In holding that the district court did have subject matter jurisdiction under the pre-2011 version of § 1442(a)(1), the Eighth Circuit assumed that the civil action was "against" the United States; the analysis focused on the colorable federal defense element. *Id.* at 693. If *Todd* does stand for the proposition that the United States' intervention in the state action converted it into an action "against" the United States, *Todd* is distinguishable from this case because in *Todd*, like in *Mora*, the documents sought were federal property. *Id.* at 692.

Similarly, when the federal government has a property interest in funds held by a private party that are the subject of a state case, removal pursuant to § 1442(a)(1) may be appropriate even when the federal entity is not originally named as a party, because the United States is "the real party in interest." *See, e.g.*, *Palmiter v. Action, Inc.*, 733 F.2d 1244, 1246 (7th Cir. 1984); *see also Smith v. Hous. Auth. of Balt. City*, No. 10-1806, 2011 WL 232006, at *2 & n.4 (D. Md. Jan. 24, 2011). It is this federal property interest in the subject matter of a dispute – funds, documents, or something else – that makes that action "against or directed to" the federal government.

In this case, while counsel for the United States did assert at the hearing that the documents sought in discovery "belong[] to the government," (*Guggenberger* Tr. of Mots. Hr'g Held Oct. 25, 2016 ("Tr.") at 11, Nov. 16, 2016, Docket No. 44), if this were the case, presumably the United States would have moved before the state court and before this Court for intervention as a matter of right. *See* Fed. R. Civ. P. 24(a); Minn. R. Civ. P. 24.01. Instead, the United States moved for permissive intervention to urge both courts to follow its preferred interpretation of federal law when applying that law to private parties and private property. (*See Guggenberger* U.S. Mot. for Permissive Intervention, Oct. 4, 2016, Docket No. 33; *Miller* U.S. Mot. for Permissive Intervention, Oct. 4, 2016, Docket No. 26; *Guggenberger* Secord Decl., Ex. D; *Miller* Secord Decl., Exs. D, F.)

The United States has also provided no legal authority showing that the documents Guggenberger and Miller seek are federal property. Rule 6(e) of the Federal Rules of Criminal Procedure – the basis for the United States' argument that discovery should be stayed – runs contrary to the United States' position. Rule 6(e) imposes an obligation of secrecy regarding "matter[s] occurring before the grand jury," but the obligation of secrecy is restricted to individuals enumerated in Rule 6(e)(2)(B): grand jurors, interpreters, court reporters, operators of recording devices, those who transcribe recorded testimony, government attorneys, and other government personnel as provided in Rule 6(e)(3)(A)(ii) or (iii). "No obligation of secrecy may be imposed on any person" other than those listed in Rule 6(e)(2)(B). Fed. R. Crim. P. 6(e)(2)(A). Rule 6(e) does not create a federal property right in privately-held documents that happen to be provided

to the grand jury or to law enforcement, nor does it prohibit disclosure of "grand jury matters" by people not enumerated in Rule 6(e)(2)(B), including Starkey or any grand jury witness.

The United States also asserts that Fed. R. Crim. P. 16 provides a defense to discovery. Rule 16, applicable in federal criminal proceedings, governs the disclosures the United States and the criminal defendant must make and limits such disclosures as follows:

> Except as permitted by [Rule 16(a)(1)], this rule does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case. Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [governing witness statements after the witness has testified on direct exam].

Fed. R. Crim. P. 16(a)(2). While Rule 16(a)(2) does limit a criminal defendant's access to government witness statements, the rule only applies to discovery available to that defendant from the United States during a federal criminal case. Rule 16 provides no basis for concluding the United States has a property right in the discovery Guggenberger and Miller seek from Starkey.

To summarize, the state court order denying the United States' motion for permissive intervention is not a "civil action . . . against or directed to" the United States. The United States has not demonstrated that any discovery Guggenberger or Miller seeks is the property of the federal government, such that those discovery proceedings could be considered "against or directed to" the United States as a "real party in interest." It is

within the state court's discretion to grant the United States permissive intervention to seek protection of its valid interests, but § 1442(a)(1) is narrower in scope than the standard for permissive intervention.   Therefore, the Court lacks jurisdiction under § 1442(a)(1) because there is no "civil action . . . against or directed to" the United States.

### b.      Colorable Federal Defense

Even if there is a "civil action . . . against or directed to" the United States, the United States must also assert a colorable federal defense for the Court to exercise jurisdiction under § 1442(a)(1). *Todd*, 245 F.3d at 693.

"For a defense to be considered colorable, it need only be plausible; § 1442(a)(1) does not require a court to hold that a defense will be successful before removal is appropriate." *Todd*, 245 F.3d at 693.   Examples of colorable federal defenses include federal immunity or defenses based on federal statutes or regulations. *See Watson*, 551 U.S. at 150-51 (federal immunity); *Todd*, 245 F.3d at 693 (federal statute); *Mora*, 2008 WL 10973336, at *2-3 (federal regulation).   The colorable federal defense must be something more than a desire to protect a generalized federal interest[12] or to encourage a preferred interpretation of federal law in a dispute between private parties. "**Innumerable** state-court proceedings affect federal interests, including every proceeding in which a court must interpret and apply a federal statute or regulation.

---

[12] The United States proposed in its briefing that a "federal interest" could substitute for a colorable federal defense, relying on *Smith*, 2011 WL 232006.   This argument is misguided because the "interest" in *Smith* was a federal **property interest** in the funds at stake, rather than the generalized federal interest in an interpretation of federal law favorable to the United States.

Section 1442(a)(1) does not permit the removal of every order that, for example, too narrowly construes a federal regulation and thereby threatens federal interests." *Mora*, 2008 WL 10973336, at *4. Allowing a mere "federal interest" to justify removal under § 1442(a)(1), particularly when a federal entity has permissively intervened in a state-court action, would expand to an absurd degree the opportunities for the federal government to self-generate removal jurisdiction.

The United States concedes that § 1442(a)(1) requires a colorable federal defense, but asserts that the parties "disagree about what colorable federal defense means in the context of a case like this," and that "the language . . . colorable federal defense, is really a vestige of the pre-1996 existence of" the statute, which only applied to federal officers and agents. (Tr. at 6-7.) But despite the 1996 and 2011 amendments, in the Eighth Circuit a "colorable federal defense" is still required for removal under § 1442(a)(1).[13] *Todd*, 245 F.3d at 693.

---

[13] The Court is bound by the Eighth Circuit's holding that § 1442(a)(1) requires the United States to assert a colorable federal defense, *Todd*, 245 F.3d at 693, even though there appears to be a circuit split on the issue. *Compare City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389-92 (6th Cir. 2007) (holding because *Mesa*'s requirement of a colorable federal defense was tied to the words "under color of office" in the statute, federal agencies need not provide a colorable federal defense because "under color of office" applies only to federal officers or agents), *with City of Jacksonville v. Dep't of Navy*, 348 F.3d 1307, 1313 n.2 (11th Cir. 2003) (recognizing that "it remains to be decided whether the requirement of a federal defense also applies to removal by the United States or one of its agencies" but declining to decide because the removing entity asserted the federal defense of sovereign immunity), *and Parker v. Della Rocco*, 252 F.3d 663, 665 n.2 (2d Cir. 2001) (same). The Court also finds the colorable federal defense requirement to be in keeping with Congress's stated intent, *see* S. Rep. No. 104-366, at 31 (explaining that the 1996 amendment did "not alter the requirement that a Federal law defense be alleged for a suit to be removable pursuant to 28 U.S.C. § 1442(a)(1)"), and with the statute's long-standing purpose of "ensuring that federal

(Footnote continued on next page.)

In this case, the United States posits that Fed. R. Crim. P. 6(e) and 16 provide federal "defenses."   The United States unsuccessfully attempts to use these procedural rules to prohibit or delay discovery in a civil case between private parties who are not defendants in a federal criminal case.   Rule 6(e) explicitly disclaims imposition of any obligation of secrecy on any person other than those enumerated in Rule 6(e)(2)(B).   Rule 16(a)(2) applies only in federal criminal proceedings and functions to limit only what information the United States may provide to criminal defendants.

The United States urges the Court, citing no authority, to assume that Guggenberger's and Miller's facially legitimate discovery requests are bad-faith efforts to circumvent the Federal Rules on behalf of Miller's spouse and Guggenberger's friend and former boss, both of whom are federal criminal defendants.   The Court declines to equate Miller with her spouse or Guggenberger with his friend, noting Plaintiffs' willingness to delay certain discovery and to stipulate to a protective order that would prohibit sharing of information with the criminal defendants.   (*See* Tr. at 23-24, 36-38, 66-69.)

This is not to say that the United States does not have a legitimate interest in protecting the integrity of federal criminal proceedings.   If the Court had jurisdiction, it would certainly have discretion to stay discovery in some manner or to fashion an appropriate protective order.   But the Federal Rules of Criminal Procedure do not support a colorable argument that the United States is **entitled** to intervention or **entitled** to block

_____

(Footnote continued.)

defenses raised by federal actors are evaluated in a federal forum," *Rodas v. Seidlin*, 656 F.3d 610, 618 (7th Cir. 2011).

the Plaintiffs' discovery in its entirety.  *See Sorensen*, 278 F.R.D. at 440 ("The Government has cited no case law supporting the removal of a civil case based solely on the claimed enforcement of the Federal Rules of Criminal Procedure in a state court civil case.").  In this case, no federal criminal defendant seeks any information from the federal government or from a person bound to secrecy by Rule 6(e).  Thus, the Federal Rules of Criminal Procedure simply do not apply.

Because the United States asserts no colorable federal defense, the second requirement of § 1442(a)(1) is not satisfied.  The Court lacks subject matter jurisdiction.[14]

## C.     Timeliness

Because there is no substantive basis for jurisdiction, the Court need not address Guggenberger's and Miller's argument that the notice of removal was untimely.

---

[14] The state court is prepared to work with the parties to protect the government's interests.  The state court's original decision to deny intervention was based on sound legal reasoning; the federal government's desire to create removal jurisdiction does not compel a state court to allow the federal government to permissively intervene.  The Court notes that even if the state court had granted permissive intervention, the United States' status as a permissive intervenor would not create a basis for jurisdiction under § 1442(a)(1).  The state court may have discretion to reconsider its denial of permissive intervention; the Court trusts that the state court, with the cooperation of the parties, will competently balance the interests at play.

This decision does not foreclose the possibility that there could be events in the future that make one or both cases removable pursuant to § 1442(a)(1).  At hearing, the parties recognized that the propriety of removal depends on hypotheses about where the civil actions might lead in the future, as opposed to the cases' present status as reflected in court filings.  The Court may not take a shortcut on the issue of subject matter jurisdiction merely because there may be a basis for jurisdiction in the future.

## II.     COSTS AND FEES

In the event of improper removal, "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."   28 U.S.C. § 1447(c).   "[C]ourts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal."   *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).   "A district court has 'considerable discretion' in determining whether to award attorney's fees pursuant to 28 U.S.C. § 1447(c)."   *Convent Corp. v. City of N. Little Rock*, 784 F.3d 479, 482 (8th Cir. 2015) (quoting *Wells Fargo Bank W., N.A. v. Burns*, 100 F. App'x 599, 599 (8th Cir. 2004) (per curiam)).

The Court holds the United States removed *Guggenberger* and *Miller* in good faith based on a plausible argument that removal was proper.   The Court finds that the United States' decision to do so was not objectively unreasonable.   Therefore, the Court declines to award costs or fees.

## III.     OTHER PENDING MOTIONS

Because the Court lacks jurisdiction, it lacks authority to consider all other pending motions.

## ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motions to Remand to State Court [Case No. 16-2021, Docket No. 11; Case No. 16-2022, Docket No. 9] are **GRANTED in part** and **DENIED in part** as follows:

a.      The motions to Remand to State Court [Case No. 16-2021, Docket No. 11 and Case No. 16-2022, Docket No. 9] are **GRANTED**.

b.      The motions for an award of costs and fees [Case No. 16-2021, Docket No. 11 and Case No. 16-2022, Docket No. 9] are **DENIED**.

c.      *Guggenberger v. Starkey Laboratories, Inc.* [Case No. 16-2021] and *Miller v. Starkey Laboratories, Inc.* [Case No. 16-2022] are **REMANDED** to the State of Minnesota District Court, Fourth Judicial District, County of Hennepin.

2.      Defendant Starkey Laboratories, Inc.'s Motions to Stay Litigation, or Alternatively, to Stay Discovery [Case No. 16-2021, Docket No. 28] [Case No. 16-2022, Docket No. 21], the United States of America's Motions for Permissive Intervention [Case No. 16-2021, Docket No. 33] [Case No. 16-2022, Docket No. 26], and the United States of America's Motions to Stay Discovery [Case No. 16-2021, Docket No. 34] [Case No. 16-2022, Docket No. 27] are **DENIED as moot**.

**LET JUDGEMENT BE ENTERED ACCORDINGLY.**

DATED:  December 29, 2016
at Minneapolis, Minnesota.

_____
s/ John R. Tunheim
JOHN R. TUNHEIM
Chief Judge
United States District Court